UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| TRANSPORTATION INSUANCE COMPANY, | : : : | |
| | : | Civ. No. 15-663 (NLH/AMD) |
| Plaintiff and Counterclaim Defendant, | : : : : | **OPINION** |
| | : | |
| v. | : : | |
| AMERICAN HARVEST BAKING COMPANY, INC., | : : : | |
| Defendant, Counterclaim Plaintiff, and Third Party Plaintiff, | : : : : : : | |
| v. | : : | |
| CNA FINANCIAL CORPORATION, LOEWS CORPORATION, and CONTINENTAL CASUALTY CORP., | : : : : | |
| Third Party Defendants. | : : : | |

**APPEARANCES**:

BRESSLER, AMERY & ROSS, P.C.
By:   Samuel J. Thomas, Esq.
325 Columbia Turnpike
Florham Park, New Jersey 07932
        Counsel for Plaintiff and Counterclaim Defendant Transportation Insurance Company
        and Third Party Defendant Continental Casualty Corporation

ELENIUS, FROST & WALSH
By:   Edward Delsesky, Esq.
1249 South River Road, Suite 300A
Cranbury, New Jersey 08512
        Counsel for Third Party Defendant CNA Financial Corporation

LIGHTMAN & MANOCHI
By:   Gary P. Lightman, Esq.
        Glenn A. Manochi, Esq.
        W. Lyle Stamps, Esq.
1520 Locust Street, 12th Floor
Philadelphia, Pennsylvania 19102
        Counsel for Defendant, Counterclaim Plaintiff, and Third Party Plaintiff American
        Harvest Baking Company, Inc.


**HILLMAN**, United States District Judge:

        This contract dispute began as an action for recovery of unpaid premiums by insurer

Transportation Insurance Company ("TIC") against American Harvest Baking Company, Inc.

("AHBC").  AHBC proceeded to counterclaim against TIC and make a third party complaint

against CNA Financial Corporation ("CNAF"), Loews Corporation ("Loews"), and Continental

Casualty Corporation ("CCC") (collectively, the "Third Party Defendants") alleging a conspiracy

to defraud amongst TIC and the Third Party Defendants (collectively, the "Counterclaim/Third

Party Defendants").  This matter comes before the Court on TIC and CCC's Motion to Dismiss

for Failure to State a Claim ("TIC's Motion" or "TIC Mot.") [Dkt. No. 23], CNAF's Motion to

Dismiss for Lack of Personal Jurisdiction ("CNAF's Motion" or "CNAF Mot.") [Dkt. No. 29];

and CNAF's Motion for Joinder in TIC and CCC's Motion ("CNAF's Joinder Mot.") [Dkt. No.

31].  For the reasons that follow, CNAF's Motion will be **DENIED WITHOUT PREJUDICE**,

TIC's Motion will be **GRANTED-IN-PART**, and CNAF's Joinder will be **DISMISSED**.

I.      BACKGROUND

The following facts are admitted by AHBC in its Answer[1] or otherwise alleged in the Counterclaim and Third Party Complaint.  AHBC was issued an insurance policy in 2013 and 2014 by an entity AHBC believed to be "CNA."  "CNA" offered a low premium amount on its insurance policy, and AHBC decided to select "CNA" as its insurance provider for worker's compensation insurance.  The insurance policy was subsequently issued to AHBC by TIC.  Premiums paid by AHBC were billed by and paid to "CNA."

Some time after signing for both the 2013 and 2014 policies, audits were performed on AHBC's policies.  The audits reclassified certain employees, which resulted in a determination that AHBC owed additional premiums under the policies in the amount of $88,053.02.  Invoices for the additional premiums were sent by "CNA."  AHBC made an initial payment of $977.15 toward this, but then ceased making any additional payments as AHBC does not believe it owes TIC the additional $87,075.87.[2]  TIC filed suit in this Court against AHBC to recover what it believes are additional monies owed to TIC.

AHBC then counterclaimed against TIC and filed a third party complaint against CCC, CNAF, and Loews, alleging, among other counts, a conspiracy to defraud amongst all four entities.  The instant motions followed.  During the pendency of these motions, AHBC voluntarily dismissed the Third Party Complaint against Loews.  (June 9, 2015 Notice [Dkt. No. 35].)

---

[1] The admissions of AHBC in its Answer to TIC's Complaint are incorporated by reference in the Counterclaim.  (Counterclaim ¶ 61.)

[2] AHBC does not deny that it does owe the money; it denies that it owes any money to TIC as opposed to "CNA."  (*See* Answer ¶¶ 16, 18.)

3

## II.      JURISDICTION

The original case as filed by TIC, an Illinois company with principal place of business in Illinois, against AHBC, a Delaware corporation[3] with principal place of business in New Jersey, was properly brought under this Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction over AHBC's Counterclaim and Third Party Complaint pursuant to 28 U.S.C. § 1367.

## III.     MOTIONS TO DISMISS

This Court will turn first to CNAF's Motion regarding lack of personal jurisdiction, and then TIC's Motion regarding failure to adequately plead and failure to state a claim.

### A.      MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

CNAF moves to dismiss the Third Party Complaint against it, arguing that this Court does not have personal jurisdiction over CNAF, a Delaware corporation with principal place of business in Illinois.  This Court finds the arguments persuasive that personal jurisdiction may not exist, but also finds that AHBC has presented sufficient evidence to permit them to pursue limited jurisdictional discovery.  Accordingly, this Court will deny CNAF's motion without prejudice to permit AHBC to undertake the limited jurisdictional discovery for the reasons that follow here.

#### 1.      LEGAL STANDARD

AHBC, as third-party plaintiff in the action against CNAF, bears the burden of demonstrating the facts that establish personal jurisdiction, and in deciding a motion brought

---

[3] The Complaint alleges that AHBC is a New Jersey corporation.  (Compl. [Dkt. No. 1] ¶ 2.) AHBC's Answer indicates that it is a Delaware corporation.  (Answer ¶ 2.)  This does not affect this Court's analysis of its diversity jurisdiction, but to the extent it is relevant, AHBC's response will control here.

under Rule 12(b)(2) the Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citations omitted).  Once a defendant raises a jurisdictional defense, the plaintiff must prove the jurisdictional facts by affidavits or other competent evidence.  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)).  "[A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction."  *Patterson ex rel. Patterson v. F.B.I.*, 893 F.3d 595, 603–04 (3d Cir. 1990) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.3d 61, 67 n.9 (3d Cir. 1984)).  Thus a court must look beyond the pleadings and consider the affidavits and other proofs submitted by the parties.  Accordingly, facts recited in this section that come from outside the pleadings are inappropriate to be considered *infra* in any discussion of the sufficiency of the pleadings.

Personal jurisdiction over a defendant in federal court is established when the defendant "is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A); *see also Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014).  Accordingly, "[a] federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 86 (3d Cir. 2004).  New Jersey "permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Industries, Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998); *see also* N.J. Ct. R. 4:4–4(b)(1).  "Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414

(1984) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)) (internal quotation marks and alterations omitted).

Personal jurisdiction may be asserted in one of two ways—general jurisdiction or specific jurisdiction.  As the Supreme Court has explained:

> A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so "continuous and systematic" as to render them essentially at home in the forum State.  Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.

*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations and internal quotations omitted).  The Supreme Court has also recognized that as its jurisprudence "has increasingly trained on the relationship among 'the defendant, the forum, and the litigation,' i.e., specific jurisdiction, general jurisdiction has come to occupy a less dominant place in the contemporary scheme."  *Daimler*, 134 S. Ct. at 758 (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)) (footnotes omitted).  This Court will analyze both bases of jurisdiction in turn.

### 2.     GENERAL JURISDICTION

AHBC alleges that this Court has general jurisdiction over CNAF based on the fact that TIC and CCC, which are subsidiaries of CNAF, are subject to the general jurisdiction of this Court and are alter egos of CNAF.  (AHBC Opp. at 20–24.)[4]  The Supreme Court in *Daimler* rejected using an agency theory for general jurisdiction, but the Court appears to have left intact the alter ego theory for general jurisdiction when dealing with parents and subsidiaries.  *See*

---

[4] CNAF is admitted by AHBC to be a Delaware corporation with a principal place of business in Illinois.  (Answer and Counterclaim ¶ 64.)  Therefore, no general jurisdiction in New Jersey exists based on the "paradigm bases" for the exercise of general jurisdiction for a corporation. *See Daimler*, 134 S. Ct. at 760 (2014).

*Daimler*, 134 S. Ct. at 759 (noting the use of the alter ego theory by several Courts of Appeals without opining on its validity). The Third Circuit has not yet had chance to opine on this issue,[5] but the Second and Ninth Circuits have, concluding that the alter ego theory as a basis for general jurisdiction survived the decision in *Daimler*. *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1071 (9th Cir. 2015) ("The alter ego test is designed to determine whether the parent and subsidiary are not really separate entities, such that one entity's contacts with the forum state can be fairly attributed to the other.") (internal quotations omitted); *Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 225–26 (2d Cir. 2014) (assuming contacts can be imputed and then finding no general jurisdiction). This Court agrees and will apply the alter ego test in this matter.

The alter ego theory is a derivation of the "piercing the corporate veil," and the alter ego test for personal jurisdiction is less stringent than the one for liability. *In re Enterprise Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 319 (W.D. Pa. 2010) (citing *Stuart v. Spademan*, 772 F.2d 1185, 1198 n.12 (5th Cir. 1985)). The determination of jurisdiction over a nonresident parent corporation by means of the acts of the subsidiary is a matter of state law. *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 443 n.25 (D.N.J. 1998). "In New Jersey, a subsidiary will be deemed to be the alter ego or 'mere instrumentality' of its parent if 'the parent so dominated the subsidiary that it had no separate existence but was merely a conduit for the parent.'" *Seltzer v. I.C. Optics, Ltd.*, 339 F. Supp. 2d 601, 610 (D.N.J. 2004) (quoting *State, Dep't of Envtl. Prot. v. Ventron Corp.*, 94 N.J. 473, 500–01 (N.J. 1983)).

---

[5] The only Third Circuit opinion to address the effect of *Daimler* and the issues of general jurisdiction over a foreign corporation has been vacated upon order of the Circuit to hear the case in front of the en banc court. *See Chavez v. Dole Food Co., Inc.*, 796 F.3d 261, 269–70 (3d Cir. 2015), *vacated pending reh'g en banc*. Regardless, the panel decision in *Chavez* was not directly applicable to the issue of corporate alter ego as a basis for general jurisdiction.

"Whether the exercise of jurisdiction over a parent corporation is proper under the alter-ego theory depends upon the details of the unique relationship between the parent corporation and its subsidiary.  The parent-subsidiary relationship itself is not sufficient to establish in personam jurisdiction over the parent entity."  *In re Enterprise*, 735 F. Supp. 2d at 317–18 (citation omitted); *see also Lucas v. Gulf & W. Indus., Inc.*, 666 F.2d 800, 805–06 (3d Cir. 1981) (remarking on factors relevant for jurisdictional analysis between a parent and a subsidiary), *abrogated on other grounds, EF Operating Corp. v. Am. Bldgs.*, 993 F.2d 1046 (3d Cir. 1993); *Carfagno v. Ace, Ltd.*, Civ. No. 04-6184 (JBS), 2005 WL 1523530, at *6 (D.N.J. June 28, 2005) (same).  A court "should examine all relevant factors that relate to the intimacy of the relationship between the parent and subsidiary to assess whether the contacts of the subsidiary with a particular state should be imputed to the parent."  *Arch v. Am. Tobacco Co., Inc.*, 984 F. Supp. 830, 837 (E.D. Pa. 1997).  In New Jersey, the factors to consider include "(1) whether the subsidiary is doing business in the forum that would otherwise be performed by the parent; (2) whether there is common ownership of the parent and a subsidiary; (3) whether there is financial dependency; and (4) whether the parent interferes with the subsidiary's personnel, disregards the corporate formalities, and/or controls the subsidiary's marketing and operational policies."  *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008) (citations omitted).[6]

AHBC's primary argument is toward the second and fourth factors regarding common ownership, disregard of corporate formalities, and control of the subsidiary's marketing policies.  AHBC argues the fact that "CNA [Financial]'s officers and directors overlap 100% [with TIC

---

[6] AHBC directs this Court to the ten-factor test used in the Eastern District of Pennsylvania, as explained in *Simeone ex rel. Simeone v. Bombardier-Rotax GmbH*, 360 F. Supp. 2d 665, 675 (E.D. Pa. 2005).  While potentially instructive, to the knowledge of this Court, this ten-factor test has never been cited to by a court in New Jersey, and primarily cited by courts in Pennsylvania. The test from *Dewey* is far more appropriate, being grounded in New Jersey state law.

and CCC], even if they do hold 'separate' meetings and keep 'separate books.'" (AHBC Opp. at 22 (citing Lehman Decl. ¶¶ 18–19).) This ignores the "well established principle of corporate law that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 1, 69 (1998) (internal quotations and alterations omitted). The declaration submitted by CNAF makes clear that each of the corporate entities involved here maintains its own corporate records and holds its meetings separately from the others. (Lehman Decl. ¶¶ 18–20.)

Construing disputed facts in favor of AHBC, the third-party plaintiff, as this Court must do, it seems that this may not actually be the case. The terms of use for CNAF's website—as submitted by CNAF—appear to conflate CCC and CNAF, stating "Continental Casualty Company ('CNA', 'we', 'our', 'us') provides this Web site and the materials located at and under the domain name cna.com (collectively, this 'Site') and any CNA services available on this Site . . . to you, the user . . . ." (Ex. A to Lehman Decl.) Similarly, CNAF does appear to control the subsidiary's marketing policies, when disputed facts are construed in favor of AHBC. CNAF, TIC, and CCC all use the common "CNA" mark. (Lehman Decl. ¶ 4.) Despite this, as other courts have reasoned, "[p]romotional statements made on a public website do not precisely convey the operative corporate structure." *LaSalle Nat'l Bank v. Vitro, SA*, 85 F. Supp. 2d 857, 865 (N.D. Ill. 2000). Also in favor of AHBC's position is the fact that the single payment it did make toward the additional premiums was debited by an entity only called "CNA" and not "Travelers Insurance Company" or anything similar. (*See* Ex. A to Roseman Aff.)

However, the full weight of the evidence present does not support a finding that CNAF "so dominates" either CCC or TIC in such a manner that the subsidiaries are "mere conduits" for

CNAF.  With respect to the first factor to be considered, CNAF could not perform the functions

of TIC or CCC.  CNAF as the parent company is purely a holding company, does not engage in

any insurance activities itself, and is not licensed to issue policies in this forum, or any other

forum.  (Lehman Decl. ¶¶ 6–13.)  As other courts have noted, a "holding company could simply

hold another type of subsidiary."  *In re Enterprise*, 735 F. Supp. 2d at 324 (quoting *Action Mfg.*

*Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 422 (E.D. Pa. 2011)).  As to the third

factor, no evidence has been submitted regarding financial dependency of either TIC or CCC on

CNAF.  Further, regarding parent control over the subsidiary's operational policies, CNAF has

explained that CNAF does not hire anyone involved with the underwriting or premium auditing

that TIC or CCC engage in, and that CNAF is not involved in the decision even as to which

subsidiary will issue the insurance policy.  (Lehman Decl. ¶ 9.)  Additionally, at least one other

court in this circuit, when analyzing multiple factors in a similar situation involving a holding

company, has concluded that in "an ordinary holding company/subsidiary relationship, not one

of undue domination and control," there is no alter ego relationship.  *Arch*, 984 F. Supp. at 837–

38.  This Court agrees with that conclusion, based on the facts and affidavits presented, with all

disputed facts construed in favor of AHBC.  There is no undue domination and control here, and

thus neither TIC nor CCC is functioning as an alter ego of CNAF.  Accordingly, this court does

not have general jurisdiction over CNAF.

### 3.  SPECIFIC JURISDICTION

AHBC's arguments for why this court has specific jurisdiction over CNAF all appear to

stem from the same alter ego argument, which this Court has already rejected as a theory for

general jurisdiction.  "The inquiry whether a forum State may assert specific jurisdiction over a

nonresident defendant 'focuses on the relationship among the defendant, the forum, and the

litigation.'" *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit related conduct must create a substantial connection with the forum State."  *Id.*  The contacts must be created by CNAF itself, not a third party, and the contacts must be with New Jersey itself, and not merely with one entity who resides here in New Jersey.  *Id.* at 1122.

AHBC explains that it sought a quote from "CNA," submitted information to "CNA," and decided to obtain a "CNA insurance policy."  (AHBC Opp. at 25; Rosenberg Aff. (Ex. A to AHBC Opp.) ¶¶ 5–9.)  The argument relies in large part on the insurance policy cover stating "Your Workers Compensation and Employers Liability Policy from CNA" and speaking to Ms. Connie Monroe, allegedly a CNA collections agent.  (AHBC Opp. at 25–26; Rosenberg Aff. ¶¶ 11–13.)  AHBC even explains it was "surprised" to have been sued by TIC rather than any company named "CNA."  (AHBC Opp. at 26; Rosenberg Aff. ¶ 15.)

When the policy documents themselves are reviewed, the policy issuer is clear.  The cover page does indeed state "Your Workers Compensation and Employers Liability Policy from CNA" in large print, but in normal sized print also states, "the company designated on the Information Page has caused this policy to be signed."  (Ex. A to Rosenberg Aff.)  Turning to the Information Page of the policies issued to AHBC, both state plainly at the top, "Coverage is Provided By NCCI Carrier Code No: 12408, *Transportation Insurance Co.*"  (Ex. C & D to CNAF Reply (emphasis added).)  While the "CNA" mark is used on the cover, this is insufficient to overcome the plain language of the policy, clearly indicating TIC as the insurance provider, and not any company with "CNA" in the name.

AHBC was required to prove jurisdiction by bringing forth affidavits or other competent evidence, *Metcalfe*, 566 F.3d at 330, and AHBC's submissions fail to overcome the issues presented in the affidavits and exhibits presented by CNAF.  CNAF, by its own affidavit, has no employees, agents, or representatives that act on its behalf regarding insurance products. (Lehman Decl. ¶¶ 8–9.)  AHBC has provided no evidence to controvert that assertion aside from its own misunderstanding of who issued its policy.  Further, AHBC has provided no evidence to satisfy either of the two requirements for "a substantial connect with the forum State" as explained in the Supreme Court's recent *Walden* decision—contacts that are (1) created by CNAF and (2) directed toward New Jersey.  AHBC's own misconceptions as to their own insurance policy are not sufficient reasons for this foreign corporation to be haled into a New Jersey court.  Accordingly, this Court also does not have a specific jurisdiction basis for personal jurisdiction over CNAF.

### 4.    JURISDICTIONAL DISCOVERY

In the absence of finding jurisdiction based on the affidavits presented, AHBC requests leave for jurisdictional discovery to "uncover evidence of additional activities conducted by CNA[F] such that CNA[F] should be subjected to general jurisdiction in New Jersey."  (AHBC Opp. at 20 n.2.)  "[C]ourts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'"  *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (citing *Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)).  "If a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, the plaintiff's right to conduct jurisdictional discovery should be sustained."  *Id.* (quoting

*Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)) (internal quotations omitted).

This case is a close call, as this Court has found that one of the issues may tip slightly in AHBC's favor.  Accordingly, AHBC has not presented a "clearly frivolous" claim of jurisdiction.  AHBC will be permitted to pursue discovery only for the limited purpose of discovering information germane to satisfying the factors as delineated in *Dewey*.  This Court will exert personal jurisdiction over CNAF to the extent necessary to require it to provide this limited jurisdictional discovery.  The period for this discovery shall be thirty (30) days from the entry of this opinion and accompanying order.  Within seven (7) days, AHBC may file a supplemental brief to demonstrate jurisdiction, and CNAF's supplemental opposition will be due seven (7) days thereafter.  If AHBC does not file a supplemental brief within the specified time, CNAF may make an application to renew its motion to dismiss for lack of personal jurisdiction, based on AHBC's failure to supplement.

### B.  MOTION TO DISMISS FOR FAILURE TO ADEQUATELY PLEAD OR FAILURE TO STATE CLAIM

All of the Counterclaim/Third Party Defendants move this Court to dismiss AHBC's Counterclaim and Third Party Complaint.  As an initial matter, TIC's Motion was joined by CNAF in a filing styled as a "Motion for Joinder."  (CNAF Joinder Mot. at 1.)  As this is not actually a Motion for Joinder under Federal Rules of Civil Procedure 19 or 20, but rather a motion to join in the arguments being made by TIC and CCC, CNAF's Joinder Motion will be dismissed.  The Court agrees with the Counterclaim/Third Party Defendants and will dismiss the complaint for failure to comply with the heightened pleading standards of Rule 9(b) and grant AHBC leave to file an amended Counterclaim and Third Party Complaint.

## 1.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that make a right to relief more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept all allegations in the complaint as true, viewing them in the light most favorable to the non-moving party, *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast as factual allegations. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

All four counts of AHBC's Counterclaim and Third Party Complaint sound in fraud, which also implicates Federal Rule of Civil Procedure 9(b).  Rule 9(b) imposes a heightened pleading standard on fraud-based claims, and provides that "[i]n alleging fraud or mistake, a party *must state with particularity* the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b) (emphasis added).  The standard of Rule 9(b) is independent of the standard applicable to Rule 12(b)(6) motions. *Cal. Pub. Emp.'s Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 144 (3d Cir. 2004).  "Although Rule 9(b) falls short of requiring every material detail of the fraud, such as date, location, and time, plaintiffs must use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)) (internal quotation marks omitted).  This requirement is intended to "place the defendant on notice of the precise misconduct with

which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal

quotations omitted).  The result is that plaintiffs may not benefit from the inferences they may

get under a traditional Rule 12(b)(6) analysis if they cannot comply with the heightened pleading

requirements of Rule 9(b).  *Cal. Pub.*, 394 F.3d at 145, 156.

Courts are required to be "sensitive to situations in which sophisticated defrauders may

successfully conceal the details of their fraud" and relax the rigid requirements of Rule 9(b).  *In

re Rockefeller*, 311 F.3d at 216 (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410,

1417 (3d Cir. 1997)).  "Nevertheless, even when the defendant retains control over the flow of

information, 'boilerplate and conclusory allegations will not suffice.  Plaintiffs must accompany

their legal theory with factual allegations that make their theoretically viable claim plausible.'"

*Id.* (quoting *In re Burlington*, 114 F.3d at 1418).

## 2.   PLEADING FRAUD UNDER RULE 9(B)

The Counterclaim/Third Party Defendants seek dismissal of the Answer and

Counterclaim and the Third Party Complaint (collectively, the "Counterclaim")[7] in its entirety as

a "shotgun pleading" with improper allegations of fraud made without the specificity required by

Rule 9(b).  The entire Counterclaim refers to actions undertaken by the "Counterclaim/Third

Party Defendants" without stating which of the four named entities—of which only three now

remain[8]—committed which acts of wrongful conduct.  Throughout the "Factual Background"

---

[7] As the Third Party Complaint [Dkt. No. 9] solely incorporates by reference allegations
contained within the Answer and Counterclaim [Dkt. No. 8] and contains no independent
allegations, for simplicity the documents will be referred to jointly as "the Counterclaim" and
citations will be to the Answer and Counterclaim [Dkt. No. 8].
[8] AHBC voluntarily dismissed its claims against Loews.  (*See* June 9, 2015 Notice [Dkt. No.
35].)

section, the "Preliminary Statement," and in each of the four counts of the Counterclaim, the

conduct of the Counterclaim/Third Party Defendants parties is generally grouped together.

The only allegations in the entire pleading that provides any specificity for which entity

engaged in any conduct are directed toward "CNA," [9] alleging:  (1) CNA never intended to issue

an insurance policy to AHBC, instead causing TIC to issue the policy; (2) all of AHBC's

negotiations and communications were with CNA; (3) payments were made to and bills were

sent by CNA; and (4) "AHBC was induced to purchase the workers compensation policy from

CNA because the initial premium it was quoted was a very competitive premium."

(Counterclaim ¶¶ 69, 71–73.)  AHBC also alleges that it never interacted with TIC.

(Counterclaim ¶ 70.)  It is on these few paragraphs that AHBC stakes its entire claim that it has

plead sufficient facts to satisfy its pleading obligations of factual particularity under Rule 8

generally and Rule 9(b) more specifically as to claims of fraud.  (*See* AHBC Opp. at 8.)

Courts in this district have held that pleadings that fail to explain who has committed

what actions are impermissibly vague and fail to comport with the pleading standards set out by

the Supreme Court in *Twombly*.  *See, e.g.*, *K.J. & T.J. ex rel. K.J., Jr. v. Greater Egg Harbor

Reg'l High Sch. Dist. Bd. of Educ.*, Civ. No. 14-145 (RBK/JS), 2015 WL 5039460, at *6 (D.N.J.

Aug. 26, 2015); *Japhet v. Francis E. Parker Mem'l Home, Inc.*, Civ. No. 14-01206 (SRC), 2014

WL 3809173, at *2–3 (D.N.J. July 31, 2014); *Falat v. Cnty. of Hunterdon*, Civ. No. 12-6804

(SRC), 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013).  In *K.J.* the court dismissed the

complaints as "impermissibly vague" due to being over 100 pages and containing allegations

---

[9] Presumably, "CNA" in the Counterclaim refers to CNA Financial Corporation.  The confusion between "CNA" as a service mark and "CNA Financial Corporation" as a juridical entity is addressed in the discussions regarding personal jurisdiction, *supra*, and something AHBC would do well to address in an amended pleading.

against seventeen individual defendants.  *K.J.*, 2015 WL 5039460, at *6.  Similarly, the court in *Falat* dismissed a 57-page complaint against sixteen defendants for being "impermissibly vague."  *Falat*, 2013 WL 1163751, at *3.  However, a lengthy complaint and excessive number of defendants are not requirements for this type of impermissible vagueness.  In *Japhet*, the court dismissed a complaint where the plaintiff "seem[ed] to confuse her bald legal conclusions and threadbare allegations against 'Defendants' generally with factually allegations of misconduct sufficient to plausibly give rise to [the movant's] liability specifically."  *Japhet*, 2014 WL 3809173, at *2.  The court found "it [was] impossible for this Court to read the Complaint and have any idea what [the movant] did to get named in this lawsuit, let alone what she did that would make her plausibly liable for the misconduct alleged."  *Id.* (internal quotations omitted).

AHBC's Counterclaim is not a lengthy complaint against an excessive number of defendants as in *K.J.* and *Falat*, but neither is it completely devoid of facts as in *Japhet*.  That being said, this Court can only deduce from the Counterclaim that AHBC is complaining of misconduct on the part of TIC and CNAF.  The Counterclaim contains absolutely no mention of CCC aside from the required recitation of CCC's state of incorporation and principal place of business.  (*See* Counterclaim ¶ 65.)  CCC is only mentioned in passing in the "Preliminary Statement" with its actions never separately delineated from those of "CNA" or TIC, and never mentioned in the "Factual Background" of the Counterclaim.  The closest the Counterclaim comes to naming specific conduct of CCC is in legal conclusions that CCC acted in an unlawful conspiracy with every other Counterclaim/Third Party Defendant without any support.  (*See* Counterclaim, Prelim. Statement ¶¶ 1–4.)  Thus, it is impossible to determine what conduct CCC engaged in that would make CCC plausibly liable for the misconduct alleged.

On these grounds, the motion will be granted with respect to CCC.  However, the "shotgun pleading" theory is insufficient to dismiss the Counterclaim against TIC and CNAF. ABHC's failure to sufficiently plead fraud under Rule 9(b), on the other hand, does provide sufficient grounds to dismiss the Counterclaim against all of the Counterclaim/Third Party Defendants.

AHBC seeks to avail itself of the modified Rule 9(b) standard available in certain instances when the answering party is a corporation.  (AHBC Opp. at 4–5, 8.)  However, this modified standard is only appropriate when the plaintiff—or counterclaimant/third party plaintiff as here—can show "that the requisite factual information is peculiarly within the defendant's knowledge or control."  *In re Rockefeller*, 311 F.3d at 216 (citing *In re Burlington*, 114 F.3d at 1418).  Here, AHBC in its Counterclaim fails to allege that there is any factual information it does not have, aside from prefacing many allegations with the phrase "AHBC believes and thus avers," which is merely a reordered version of pleading "on information and belief."  In the context of Rule 9(b), a party is permitted to "allege, on information and belief, the specific facts which give rise to the necessary inference of fraud if the information lies within the *defendant's exclusive possession and control*, and [the party has] made *diligent efforts to obtain* such information."  *In re Am. Travellers Corp. Sec. Litig.*, 806 F. Supp. 547, 554 (E.D. Pa. 1992) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1991)) (emphases added).  The Counterclaim is devoid of any such allegations on behalf of AHBC.  Even where "AHBC believes and thus avers," there is neither an assertion that the information is within the Counterclaim/Third Party Defendants' *exclusive* possession and control, nor any detailing of how AHBC made *diligent efforts* to obtain any missing information it would need to plead fraud under Rule 9(b).

Only in AHBC's Opposition does AHBC begin to explain what information it is missing in order to plead fraud with specificity.  (AHBC Opp. at 10.)  However, it is well settled that a complaint may not be amended in briefs filed in opposition to a motion for failure to state a claim.  *Frederico*, 507 F.3d at 201–02.  Accordingly, the factual arguments made in AHBC's Opposition regarding this issue must be disregarded.  Even if this Court could consider this, AHBC still fails to explain what diligent efforts it has undertaken to attempt to obtain the information in anticipation of filing its Counterclaim.  Accordingly, the modified Rule 9(b) standard is inappropriate here.  However, even applying the relaxed standard under Rule 9(b), the Counterclaim still fails to adequately plead fraud with particularity as required.

As explained *supra*, Rule 9(b) is a standard separate and apart from Rule 12(b)(6), and provides an independent basis for dismissal of a complaint.  Even a relaxed standard requires "injecting precision and some measure of substantiation" into allegations of fraud.  *Cal. Pub.*, 294 F.3d at 144.  AHBC has failed to do this.  As an example, AHBC alleges without any factual support that "AHBC suspects and believes and thus avers that in over 90% of the 'audits' conducted by Counterclaim/Third Party Defendants, the result was a premium increase over the initial, artificially low premium quoted to consumers (such as AHBC), to induce them to purchase in the first instance."  (Counterclaim ¶ 81.)  Nowhere in the Counterclaim does AHBC offer any "substantiation" of this allegation, despite it being an essential part of its allegations regarding fraud.

The heightened pleading standards of Rule 9(b) have been said to require a plaintiff to identify the "who, what, where, when, and how" of the fraud.  *See In re Burlington*, 114 F.3d at 1422.  Reading AHBC's Counterclaim, their allegations of misconduct seem to condense down to two major issues:  (1) the initial offer of the policy and (2) the eventual audits of the policy.

19

AHBC does not identify who offered it the policy, who at any of the various entities it has sued performed the audit, or who contacted AHBC regarding the increased in premiums following the audit.  Accordingly, AHBC also fails to demonstrate the "who" in the alleged fraud.  AHBC further alleges that the information regarding its employees did not change between the time the policy was signed for and the time of the audits, but provides no information regarding what AHBC told its insurance broker about its employees, or what was actually wrong with the audits. (*See* Counterclaim ¶ 77.)  Thus, AHBC fails to demonstrate the "what" element of fraud.

The "where," "when," and "how" elements of fraud can be plausibly inferred from the Counterclaim.  The "where" is generally at the corporate offices of the Counterclaim/Third Party Defendants, the "when" is in 2014 when the audits were performed, and the "how" is by offering a low initial insurance cost, and subsequently performing an audit that raised the price significantly.  But three out of five is insufficient.  Therefore, the Court will grant the motion to dismiss for failure to plead with specificity under Rule 9(b).  The remainder of the arguments under Rule 12(b)(6) and the specifics of how each individual count fails under Rule 9(b) need not be addressed.

### C.   DISMISSAL WITH LEAVE TO AMEND IS APPROPRIATE HERE

Having determined that the Counterclaim fails plead fraud with particularity under Rule 9(b), it will be dismissed without prejudice, and AHBC will be granted leave to file an amended Counterclaim and Third Party Complaint.  *See In re Burlington*, 114 F.3d at 1435 ("Ordinarily where a complaint is dismissed on Rule 9(b) 'failure to plead with particularity' grounds alone, leave to amend is granted.").  Due to the fact that this Court will also grant jurisdictional discovery to AHBC for a period to conclude within thirty (30) days of this opinion and accompanying order, AHBC must file its amended Counterclaim and Third Party Complaint

within sixty (60) days of this opinion and accompanying order.  If no amendment is timely filed, TIC, CCC, and CNAF may make an application for dismissal based on AHBC's failure to amend.  *See Phillips*, 515 F.3d at 234.

IV.     **CONCLUSION**

For the foregoing reasons, CNAF's Motion to Dismiss for Lack of Personal Jurisdiction will be denied without prejudice, TIC's Motion to Dismiss for Failure to Sufficiently Plead or State a Claim will be granted-in-part as failing to sufficiently plead fraud under Rule 9(b), and CNAF's Motion for Joinder will be dismissed.

Jurisdictional discovery is permitted to determine whether TIC or CCC is an alter ego of CNAF according to the factors as explained in *Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 513 (D.N.J. 2008).  The period for this discovery is 30 days.  Within 7 days thereafter, the parties may file supplemental briefs on the issue of personal jurisdiction.  If no supplemental briefs are filed, CNAF may make an appropriate application to this Court.

The Counterclaim and Third Party Complaint are dismissed without prejudice, and AHBC is given leave to file an amended Counterclaim and Third Party Complaint within sixty (60) days.  If no amended pleading is filed, the Counterclaim/Third Party Defendants may make an appropriate application to this Court.

An appropriate order accompanies this opinion.

Date:  December  _16th_ , 2015


                                                   s/ Noel. L. Hillman
                                                  NOEL L. HILLMAN, U.S.D.J.